UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ROBERT L. TOBEY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KEITER, STEPHENS, HURST, GRAY & SHREAVES, A PROFESSIONAL CORPORATION, *et al.*,<br><br>　　　　　　　　　　Defendants. | Action No. 3:13-CV-315 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss Counts II, III, IV and V of the Complaint ("Motion") (ECF No. 3). This case was commenced when Plaintiff Robert L. Tobey, CPA ("Tobey" or "Plaintiff") filed a five count complaint against Keiter, Stephens, Hurst, Gray & Shreaves, A Professional Corporation ("Keiter" or the "Firm") and the 2009 Amended and Restated Retirement Obligation Plan of Keiter, Stephens, Hurst, Gray & Shreaves, A Professional Corporation (the "Plan") (collectively, "Defendants"). Count I of the Complaint seeks to enforce and clarify Tobey's right to retirement benefits under the Employee Retirement Income Security Act ("ERISA"). Counts II, III, IV, and V allege various state law breach of contract claims relating to Keiter's payment of compensation and bonuses to Plaintiff and treatment of Plaintiff as a shareholder. Defendants collectively seek to dismiss the state law claims for lack of subject matter jurisdiction. The Court held a hearing on the Motion on August 7, 2013. For the reasons stated below, the Motion is GRANTED and Counts II, III, IV, and V are DISMISSED.

## **BACKGROUND**

The facts as set forth in the complaint indicate Tobey operated a solo accounting practice in Charlottesville, Virginia until he merged his practice with Keiter in 2005. Compl. ¶¶13, 17. As

part of the merger, Tobey became a participant in the Plan, which he alleges was the primary catalyst for agreeing to the merger. Compl. ¶ 20. Also as part of the merger, Tobey received an annual fixed salary, which entitled him to receive annual "lock-step" increases in accordance with the salary policies for partners at Keiter. Compl. ¶¶ 22-23. Finally, as part of the merger, Tobey received equity ownership in Keiter. Compl. ¶ 24. Tobey alleges this equity ownership entitled him to share in Keiter's annual growth, regardless of whether he was included in Keiter's bonus pool, something important to him for the purposes of his retirement benefits under the Plan. Compl. ¶¶ 25-26.

After the merger, in 2008, Keiter changed its bylaws so that for equity partners to share in firm growth, they had to be included in the annual bonus pool. Compl. ¶ 31. Tobey contends this change targeted him specifically because he was not granted a bonus in 2006, though he was granted a share of the firm growth. Compl. ¶ 32. Tobey further alleges that the allocation of overhead to the Charlottesville office, which Tobey managed, "virtually guaranteed" that the Charlottesville office would not show a net profit, which would keep him out of the bonus pool and prevent him from receiving a share of the annual firm growth. Compl. ¶¶ 35-37. In 2008, Tobey did not receive a bonus or a share of the firm's growth, unlike all other partners. Compl. ¶ 38. Tobey contends that his lack of sharing in the overall growth had a substantive negative impact on his retirement benefits under the Plan. Compl. ¶ 39. In addition, Tobey alleges Keiter cut his annual salary from $185,000 to $135,000, effective January 1, 2009, and that Keiter unfairly treated Tobey when it came to paying bonuses. Compl. ¶¶ 46-47.

Based on his concerns described above, Tobey drafted a letter, dated May 6, 2009, expressing his intent to retire on January 1, 2012, pursuant to the notice provisions of the Plan. Compl. ¶¶ 51-52, 54. On May 6, 2009, Tobey met with Keiter's President, Lewis Hall, and tendered the resignation letter. Compl. ¶ 55. The meeting became heated and Hall expressed his reluctance to take any action on Tobey's letter and offered to try to "work things out" with Tobey. Compl. ¶¶ 57-59. Tobey alleges this did not mean taking retirement off of the table and

that Hall did not give Tobey the letter back. Compl. ¶ 59. Hall ultimately, allegedly on his own initiative, decided not to show Tobey's letter to Keiter's Executive Committee. Compl. ¶ 62. Tobey alleges that Keiter made some "minor" changes after he submitted his letter, but that the changes were not designed to address his concerns. Compl. ¶ 65. Tobey also alleges that one important change Keiter made to how it allocated overhead was reversed in 2011. Compl. ¶ 72.

Ultimately, Tobey asserts he decided to act on his previously-expressed intent to retire. Compl. ¶ 79. On February 24, 2012, Tobey submitted a letter to Keiter, setting his last day of employment as April 30, 2012 and making his claim for retirement benefits under the Plan. Compl. ¶ 79. Tobey's claim for retirement benefits under the Plan was denied on May 22, 2012. Compl. ¶ 83. Tobey alleges that the basis for Keiter's denial decision was that Tobey had rescinded and/or withdrawn his May 6, 2009 notice of his intent to retire. Compl. ¶ 87. Tobey argues that the decision to deny benefits was "improperly motivated by emotional considerations (namely, personal animosity against Tobey) that had nothing to do with the actual merits of Tobey's claim." Compl. ¶ 89. Tobey appealed Keiter's denial decision, but the decision was upheld. Compl. ¶¶ 93-94.

Tobey then filed the instant action on May 30, 2013. Count I of the Complaint against the Plan and Keiter alleges violations of ERISA because Keiter's denial decision was wrong, incorrect, improper, contrary to the plain language of the Plan, an abuse of discretion, arbitrary and capricious, and otherwise in violation of ERISA. Compl. ¶¶ 104-106. Counts II through V are claims against Keiter alone for various breaches of contract under Virginia law related to Tobey's rights as an employee and shareholder. Count II alleges breach of contract based on Keiter's reduction of Tobey's salary. Compl. ¶¶ 109-113. Count III alleges a breach of contract by Keiter in failing to pay Tobey bonuses in certain years or by not paying him bonuses equivalent to those of similarly situated shareholders. Compl. ¶¶ 115-121. Count IV alleges Keiter breached its contractual obligations to Tobey as a shareholder by failing to include him in the bonus pool, resulting in his share of the firm's value not increasing on the same basis as other shareholder.

Compl. ¶¶ 122-128. Finally, Count V alleges Keiter breached its contractual obligations because Tobey has a right to be paid for his stock in Keiter and Keiter has not done so. Compl. ¶¶ 129-133.

Defendants collectively move to dismiss Counts II through V, pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defendants contend that the state law claims are not entitled to supplemental jurisdiction under 28 U.S.C. § 1367 because they do not "derive from a common nucleus of operative fact" as the federal law ERISA claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Tobey responded in opposition and Defendants replied. The Court heard argument on the matter on August 7, 2013. The matter is therefore ripe for decision.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(1), challenging the Court's subject matter jurisdiction, "the burden rests with the plaintiff, the party asserting jurisdiction, to prove that federal jurisdiction is proper." *Lucas v. Henrico Cnty. Sch. Bd.*, 822 F. Supp. 2d 589, 599 (E.D. Va. 2011). A party "can attack subject matter jurisdiction in two ways." *Id.* The party may, as Defendants do here, "attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie." *Id.* In such a case, the "court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration." *Id.* (citing *Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996)). A party challenging subject matter jurisdiction may also "challenge the existence of subject matter jurisdiction in fact, apart from the pleadings." *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). In this second type of challenge, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (citing *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338).

>Pursuant to 28 U.S.C. § 1367,
>
>[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

§ 1367(a). Section 1367 "largely codified the doctrine of pendent jurisdiction (and the related doctrine of ancillary jurisdiction) as supplemental jurisdiction." *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012). Thus, "once a district court ha[s] valid jurisdiction over a federal claim, it could, in its discretion, exercise supplemental jurisdiction over additional state claims if they arose out of 'a common nucleus of operative fact.'" *White v. Cnty of Newberry*, 985 F.2d 168, 171 (4th Cir. 1993) (quoting *Gibbs*, 383 U.S. at 725). As the Supreme Court declared in *Gibbs*,

>[t]he state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

*Gibbs*, 383 U.S. at 725.

Section 1367(a) is, however, subject to the exceptions set forth in subsections (b) and (c). Subsection (c) is applicable here and provides that a district court

>may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
>(1) the claim raises a novel or complex issue of State law,
>
>(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>(3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c).

## DISCUSSION

Tobey's state law claims must be dismissed because they do not derive from a common nucleus of operative fact as the ERISA claim set forth in Count I of the Complaint and even if they did so derive, the Court would exercise its discretion to decline jurisdiction. To determine whether the federal and state law claims in this case derive from a common nucleus of operative fact, it is first necessary to determine what Plaintiff will be required to prove under each type of claim raised in the Complaint. The federal claim alleges violations of ERISA and seeks relief pursuant to 29 U.S.C. § 1132(a)(1)(B). The United States Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where "the administrator or fiduciary is given discretionary powers under the plan, his decisions are reviewed for abuse of discretion and will not be disturbed if they are reasonable." *Bernstein v. Capitalcare, Inc.*, 70 F.3d 783, 787 (4th Cir. 1995) (citing *Bruch*, 489 U.S. at 111, 115). After determining the standard of review, if the "district court reviews a plan administrator's decision under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the time of the decision." *Id.* at 788 (citing *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994). In such an instance, discovery is generally prohibited beyond the administrative record. *Helton v. AT&T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013).

The Fourth Circuit has set forth eight factors a court should consider when determining if there was an abuse of discretion:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of

ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000).

A conflict of interest exists when "a plan administrator both evaluates claims for benefits and pays benefits claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). In reviewing a denial of benefits, a court must consider a conflict of interest as a factor in determining whether an administrator has abused his discretion. *Id.* at 115 (citing *Bruch*, 489 U.S. 101). The presence of a conflict of interest does not change the standard of review from the deferential standard to *de novo* nor does it create a special burden of proof. *Id.* at 115-16. Rather, a court must "take account of several different considerations of which a conflict of interest is one." *Id.* at 117. In some instances a conflict of interest will be an important tiebreaking factor and in other instances it "should prove less important (perhaps to the vanishing point)." *Id.* In order to allow for consideration of the conflict of interest factor, the Fourth Circuit has provided that "a district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the *Booth* factors." *Helton*, 709 F.3d at 356.

Under the above framework, the Court will consider Tobey's ERISA claims. Grounds II through V of the Complaint, to the contrary, set forth ordinary Virginia state law breach of contract claims. Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 79 (Va. 2006) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). Tobey's contract claims will require review of the employment contract, the actions taken by Keiter during Tobey's employment with the firm, and Tobey's rights as a shareholder in Keiter.

With this framework established, the Court must next consider the operative facts that will be required to prove the ERISA claim versus those required to prove the state law claims.[1] The federal and state law claims do not arise out of a common nucleus of operative fact because the federal claims hinge on whether the Keiter Executive Committee abused its discretion in denying Tobey's benefits claim, specifically in determining whether Tobey withdrew the 2009 letter stating his intention to retire. This review will be based mainly on the administrative record because the Plan vests the Keiter Executive Committee with discretion in interpreting the Plan, a fact which Tobey does not contest. *See Helton*, 709 F.3d at 352. The state law claims, on the other hand, require review of decisions relating to Tobey's employment agreement, compensation during his employment with Keiter, and his rights as a shareholder under Keiter's equity policies. As the Northern District of Illinois stated in a factually similar case where the plaintiff alleged violations of ERISA and a state law breach of contract claim, "the mere fact that claims arise from an employment relationship is, by itself, insufficient to warrant the exercise of supplemental jurisdiction." *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005). That court went on to find that "whether the Appeals Committee abused its discretion in reviewing the administrative record is not an 'operative fact' as to whether BCS, a separate party, breached its obligations under an independent agreement with Berg." *Id.* at 1095. Similarly, the operative facts in the administrative record regarding Tobey's retirement notice are not the

---

[1] Contrary to Plaintiff's assertion that the Fourth Circuit considerably expanded supplemental jurisdiction in its decision in *White*, Plaintiff still bears the burden to prove the state law claims derive from a common nucleus of operative fact as the ERISA claim. In *White*, the Fourth Circuit reviewed a pollution case involving the discharge of trichloroethylene into the plaintiffs' ground water and well. *White*, 985 F.2d at 170. The Whites sought two different types of relief: (1) reimbursement of their response costs under the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and (2) monetary damages for inverse condemnation under state law. *Id.* at 172. In reviewing whether the district court had supplemental jurisdiction, the Fourth Circuit began its consideration by citing to the language in *Gibbs*, requiring that the federal and state law claim "arose out of 'a common nucleus of operative fact' such that the plaintiff would ordinarily be expected to try the claims in one judicial proceeding." *Id.* at 171. The Fourth Circuit recognized that the Whites' sought two different types of recovery, but noted "supplemental jurisdiction is not limited to restatements of the same basic ground for recovery." *Id.* at 172. The court explained that the claims must rather "revolve around a central fact pattern." *Id.* This does not remove the *Gibbs* requirement that the common facts be "operative facts." The Fourth Circuit, rather, restated the *Gibbs* requirements and made it clear that the federal and state law claims need not be mere restatements of one another.

operative facts as to whether Keiter breached its obligations under Tobey's employment contract.

The question then becomes what effect, if any, a conflict of interest has on the operative facts for the ERISA claim. Tobey contends the Court will be able to consider evidence outside of the administrative record based on the conflict of interest created by the Keiter Executive Committee both paying benefits and making benefit decisions under the Plan. Due to this conflict, the Court may consider evidence and allow discovery outside of the administrative record to the extent that the evidence sheds light on the conflict of interest and its effect on the administrator's decision in denying Tobey's retirement benefits. *Helton*, 709 F.3d at 356. In *Helton*, however, the Fourth Circuit upheld the district court's consideration of "*limited* evidence outside of the administrative record, but known to [the defendant] when it rendered [the plaintiff's] benefits determination." *Id.* at 348 (emphasis added). In order to determine the effect of the conflict of interest in this case, the Court can, and may, similarly allow limited discovery on Keiter's motivations and biases in denying Tobey's retirement benefits. This does not, however, require the Court to extensively review Tobey and Keiter's employment agreement and equity policies. Nor does it require the Court to determine whether Keiter actually fulfilled all of its obligations under its agreements and policies.[2] The Court need only consider Keiter's motivations in determining Tobey withdrew his notice of retirement, not the other actions it took with regard to Tobey. The state law claims therefore require the consideration of operative facts outside those that must be considered under the ERISA claim and the Court does not have supplemental jurisdiction to consider Counts II through V in the Complaint.

---

[2] Tobey also contends that the federal and state law claims are related because Count IV, treatment of Tobey as a shareholder, may have some effect on the amount of his entitlement to benefits under the Plan. Tobey is incorrect, however, in concluding that this means the ERISA claim and the state law claims arise from a common nucleus of operative fact. As Defendants pointed out, the ERISA claim involves only whether the Keiter Executive Committee abused its discretion in denying *any* retirement benefits to Tobey. The Court need not address the amount of Tobey's entitlement in order to determine whether Tobey did in fact violate the notice requirements under the Plan.

9

Even if the Court did have supplemental jurisdiction over the state law claims, it would exercise its discretion to decline jurisdiction under § 1367(c)(2). The state law claims in this case "substantially predominate over the" ERISA claim, and therefore, the Court may decline to exercise jurisdiction. § 1367(c)(2). Tobey, himself, asserts that this case is really "about the unlawful efforts of Keiter to 'undo' its merger with Tobey." Pl.'s Opp'n Mot. Dismiss 1. Keiter's alleged attempts to undo the merger involve Keiter's decisions affecting Tobey's employment agreement and compensation and relate directly to Tobey's state law claims, not the ERISA claim, which depends entirely upon whether or not it was reasonable to decide the Tobey had withdrawn his notice of retirement. Thus, by Tobey's own contention, the state law claims will predominate over the federal claims. Additionally, Tobey stated at the hearing on this Motion that if the state law claims are not dismissed, he would demand a jury trial. At such a trial, the state law claims require a different standard or proof—preponderance of the evidence, as opposed to abuse of discretion—and require proof of different substantive evidence than the ERISA claim. This further demonstrates the predominance of the state law claims.

The state law claims would also predominate by significantly expanding the scope of discovery. *See Berg*, 372 F. Supp. 2d at 1096 (noting the "state law breach of contract claim will involve considerably more expansive discovery"). Here, whether Keiter abused its discretion in denying Tobey's retirement benefits and the effect of the conflict of interest on that decision can be decided based on the administrative record and limited discovery beyond that record. The state law claims, however, would require discovery and review of evidence significantly beyond the administrative record, including the records stemming from the merger, the employment contract, and Keiter's equity policies. The state law claims would also require determinations based on witnesses and documents to consider whether a breach occurred, specifically with regard to the Keiter Executive Committee's decisions to change its bylaws and treatment of the Firm's Charlottesville office. These determinations are simply not the subject of the ERISA

claim. The state law claims therefore substantially predominate over the federal claim and the Court would chose to decline jurisdiction even if supplemental jurisdiction did exist.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss. Counts II, III, IV, and V are therefore DISMISSED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

>
> _____/s/_____
> James R. Spencer
> United States District Judge

ENTERED this __13th__ day of August 2013.