UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ROBERT L. TOBEY, CPA,<br><br>                                    Plaintiff,<br><br>v.<br><br>KEITER, STEPHENS, HURST, GARY &<br>SHREAVES, A PROFESSIONAL<br>CORPORATION,<br><br>and<br><br>2009 AMENDED AND RESTATED<br>RETIREMENT OBLIGATION PLAN OF<br>KEITER, STEPHENS, HURST, GARY &<br>SHREAVES, A PROFESSIONAL<br>CORPORATION,<br><br>                                    Defendants. | Action No. 3:13–CV–315 |

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Plaintiff's Motion for Extension of Time ("Motion for Extension") as well as Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") and Defendants' Motion for Summary Judgment ("Defendants' Motion"). Plaintiff Robert L. Tobey ("Tobey") filed a five-count Complaint against Keiter, Stephens, Hurst, Gary & Shreaves, a Professional Corporation, ("Keiter") and the 2009 Amended and Restated Retirement Obligation Plan of Keiter, Stephens, Hurst, Gary & Shreaves ("Plan"). Only Count One remains, and it alleges that Keiter violated the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") by denying Tobey retirement benefits. For the reasons that follow, the Court GRANTS the Motion to Extend Time, GRANTS Defendants' Motion, and DENIES Plaintiff's Motion.

//

//

# I. BACKGROUND

A. STATEMENT OF FACTS[1]

As set forth in the administrative record, Tobey operated a solo accounting practice in Charlottesville, Virginia, until he merged his practice with Keiter in 2005. As part of the merger, Tobey became a participant in the Plan and received an annual salary. Additionally, as part of the merger, Tobey received equity ownership in Keiter. Tobey alleges this equity ownership entitled him to share in Keiter's annual growth regardless of whether he was included in Keiter's bonus pool. This ownership interest was important to Tobey for the purposes of his retirement benefits under the Plan.

After the merger, in 2008, Keiter made several business changes that Tobey perceived as unfairly targeting and negatively affecting him. For example, Keiter changed its bylaws so that equity partners had to be included in the bonus pool in order to share in firm growth. Tobey contends this change targeted him specifically because he was not granted a bonus in 2006, though he was granted a share of the firm growth. Tobey further alleges that the allocation of overhead to the Charlottesville office and other negative treatment by Keiter had a substantive negative impact on his retirement benefits under the Plan. In addition, Tobey alleges Keiter cut his annual salary from $185,000 to $135,000, effective January 1, 2009, and treated him unfairly with regard to bonus payments.

Based on his concerns, Tobey drafted a letter, dated May 6, 2009 ("2009 Notice"), expressing his intent to retire on January 1, 2012, pursuant to the notice provisions of the Plan. The 2009 Notice's introductory paragraph indicated that Tobey had "mapped out a course of action" to bring his concerns to Keiter's attention. AR000063. Tobey wrote that he would "allow seven days to work things out with [the Executive Committee] before calling a Board of Directors meeting to air my significant concerns before all equity partners." AR000063. The

---

[1] All facts are taken from the parties' submissions and the administrative record. The administrative record is referred to herein by Bates-numbered pages AR000001 through AR000667.

2009 Notice concluded, "I look forward to meeting you and hope to have reason in the future to rescind my retirement notice." AR000066. Along with the 2009 Notice, Tobey created a draft Notice of Special Meeting, which would have called a special meeting of Keiter's Board of Directors on May 19, 2009, if it had been published. The meeting notice draft also gave notice of Tobey's intent to retire on January 1, 2012, and stated that Tobey "would be delighted to have reason to rescind this notice of retirement, as [he had] need and desire to work beyond age 58." AR000068.

Also on May 6, 2009, Tobey met with Keiter's President, Lewis Hall, and tendered the 2009 Notice and the meeting notice draft. Tobey alleges that the meeting became heated, that Hall expressed his reluctance to take any action on Tobey's letter, and that Hall offered to try to work things out with Tobey. Hall did not give Tobey the letter back, and the letter was never given to other members of the Keiter Board of Directors or Executive Committee. Further, the meeting notice draft was never finalized or published by Tobey, and no special meeting of the Board of Directors was held. Whether the decision to withhold the 2009 Notice was made by Tobey or Hall is emphatically disputed by the parties.

After these events occurred, Tobey continued to work for Keiter. Tobey alleges that Keiter made some "minor" changes in its treatment of Tobey and the Charlottesville office after he submitted his letter; however, he asserts that the changes were not designed to address his concerns. AR000569-70. Nevertheless, in a 2010 self-evaluation, Tobey reported an expected retirement date of December 31, 2017. AR000176. This retirement date was incorporated into Keiter planning documents, which were presented to the Board of Directors and to Tobey without objection or correction. Keiter further alleges that Tobey created and presented achievement goals for 2012 without indicating any intent to retire at the beginning of that year, and that he participated in a hiring decision in January 2012 the purpose of which was to facilitate Tobey's 2012 goal achievement.

Ultimately, Tobey decided to retire. On February 24, 2012, Tobey submitted a letter to Keiter, setting his last day of employment as April 30, 2012, and making his claim for retirement benefits under the Plan. By letter dated March 9, 2012, Keiter accepted Tobey's resignation and first asserted its belief that Tobey had rescinded the 2009 Notice. Nevertheless, having agreed to continue working beyond April 30 to transition clients and complete certain projects, Tobey's last day of work for Keiter was actually May 21, 2012. On May 22, 2012, Tobey's claim for retirement benefits under the Plan was denied. The basis for Keiter's denial decision was that Tobey had rescinded and/or withdrawn the 2009 Notice of his intent to retire shortly after tendering it to Hall. Tobey appealed Keiter's denial decision, but the decision was similarly upheld on November 14, 2012.

B.  THE PLAN

The Plan was adopted with the intent "to pay retirement benefits to those of [Keiter's] employees designated as having participating status" under the Plan. AR000001. It grants "sole and express discretionary responsibility to interpret the terms of the Plan and to decide factual and other questions relating to the Plan and Plan benefits, including, without limitation, eligibility for, entitlement to and payment of benefits." AR000007.

Section 6 of the Plan, which governs payment of retirement obligations under the Plan is of particular importance to the instant action. Section 6 states:

> A Participant shall provide to the Corporation not less than two years advance written notification of his intention to terminate service from the Corporation . . . . If less than two (2) years' advance written notice has been provided to the Corporation, the Vested Retirement Obligation Amount payable to the Participant shall be reduced as follows:

| Time of Written Notice Prior to Termination of Service | Reduction Percentage (%) |
| --- | --- |
| 18 to 23 months | 25% |
| 12 to 17 months | 50% |
| 6 to 11 months | 75% |
| Less than 6 months | 100% |

AR000004. There are no other provisions in the Plan regarding notice of intent to retire.

4

### C. PROCEDURAL POSTURE

Tobey filed the instant action on May 30, 2013. Count One of the Complaint against the Plan and Keiter alleges violations of ERISA because Keiter's denial decision was wrong, incorrect, improper, contrary to the plain language of the Plan, an abuse of discretion, arbitrary and capricious, and otherwise in violation of ERISA. Counts Two through Five are claims against Keiter alone for various breaches of contract under Virginia law related to Tobey's rights as an employee and shareholder. On August 13, 2013, the Court granted Defendants' Motion to Dismiss Counts Two through Five for lack of subject matter jurisdiction.

On October 7, 2013, the Court granted an agreed motion ("Briefing Order") setting a briefing schedule for cross-motions for summary judgment. The schedule set October 17, 2013, as the deadline for each party to file its motion for summary judgment. Prior to the deadline, the parties agreed to allow Tobey to file his motion for summary judgment on October 18, 2013. However, counsel for Tobey states that he experienced computer problems on October 18, 2013, and that he was ill from October 18, 2013, through October 20, 2013. Counsel for Tobey states that these delays made him unable to finalize the brief in support of the Plaintiff's Motion until October 23, 2013, when it was filed. Eight days after belatedly filing the Plaintiff's Motion, Tobey moved to modify the previously entered Briefing Order and to deem Plaintiff's Motion timely. Defendants filed an opposition to Plaintiff's Motion to Modify on November 6, 2013, asserting that Tobey fails to show that excusable neglect justifies his belated filing of the Plaintiff's Motion.

## II.   LEGAL STANDARD

Generally, a motion for summary judgment should be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). However, in actions brought under ERISA, summary judgment is "merely the conduit to bring the legal question before the district court and the usual tests of summary

5

judgment . . . do not apply." *Keith v. Fed. Express Corp. Long Term Disability Plan*, No. 7:09-cv-389, 2010 U.S. Dist. LEXIS 37480, at *10 n.4 (W.D. Va. Apr. 15, 2010) (quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (en banc)); *accord Malagrida v. Holland*, No. 93-1381, 1994 U.S. App. LEXIS 5158, at *13-15 (4th Cir. Mar. 21, 1994) (upholding the district court's grant of summary judgment where a plan administrator resolved a disputed factual issue).[2]

Congress enacted ERISA "'to promote the interests of employees and their beneficiaries in employee benefit plans.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90, (1983)). Under ERISA**,** authority is vested in a benefit plan's administrator to serve as a fiduciary and to protect the interest of the participants and beneficiaries of the plan. Therefore, when the terms of an employee benefit plan provide discretionary authority to the fiduciary to determine a claimant's entitlement to benefits or to construe the terms of a plan, the fiduciary's decision will be given deference and overturned only when the decision is an abuse of discretion. *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 341 (4th Cir. 2000); *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997) (applying the abuse of discretion standard when the plan provided claim administrator with discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits).

//

//

---

[2] The Court notes that the appropriate procedural disposition of cross motions for summary judgment in an ERISA action is somewhat unclear in the Fourth Circuit. *Compare Malagrida*, 1994 U.S. App. LEXIS 5158, at *13-15, *with Stewart v. Bell*, No. WDQ-09-2612, 2012 U.S. Dist. LEXIS 3866 (D. Md. Jan. 12, 2012), *and Lamb v. Nextel Commc'ns of the Mid-Atlantic, Inc.*, No. 4:09cv149, 2010 U.S. Dist. LEXIS 109530, *adopted by* 2010 U.S. Dist. LEXIS 109535 (E.D. Va. Oct. 13, 2010), *aff'd*, 429 F. App'x 337 (4th Cir. May 20, 2011). However, whether the Court proceeds under Federal Rule of Civil Procedure 56 or Rule 52, the result is the same: because the fiduciary's factual determinations and decision are entitled to deference, judgment turns on a determination of whether the plan administrator abused its discretion. Where the plan administrator resolved a factual dispute, de novo consideration of the same disputed issue of fact—for example, by way of a bench trial—would be inappropriate and in derogation of the required deference. *Cf. Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 323 (4th Cir. 2008)

### III.    DISCUSSION

A. MOTION FOR EXTENSION

As an initial matter, the Court must dispose of Plaintiff's Motion for Extension to determine whether Plaintiff's Motion for Summary Judgment will be deemed timely and, therefore, considered by the Court.

Rule 6(b) of the Federal Rules of Civil Procedure allows a court to extend the time for filing a motion after the time for filing as expired if good cause exists and "if the party failed to act because of excusable neglect."[3] Fed. R. Civ. P. 6(b)(1)(B). In determining whether a party has established excusable neglect, a court must consider whether "late filings caused by inadvertence,  mistake, or carelessness, as well as by intervening circumstances beyond the party's control" are excusable, taking into account all relevant circumstances including "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388, 395 (1993)). The most important consideration for determining whether neglect is excusable is the reason for the delay, and the decision to grant or deny an enlargement of time is committed to the discretion of the district court. *Id.* at 532 n.2, 534.

Tobey articulates that computer problems and illness prevented counsel from finalizing Plaintiff's Motion for Summary Judgment prior to October 23, 2013. These excuses constituted intervening circumstances beyond Tobey's control. Contrary to Defendants' assertion, Tobey has justified the delay from October 21 until October 22. Further, Defendants do not allege that

---

[3] This standard applies only to the requested extension for filing Plaintiff's Motion for Summary Judgment. The deadlines for the Parties' opposition and reply briefs had not expired at the time Plaintiff requested an extension and, therefore, only good cause must be shown. *See* Fed. R. Civ. P. 6(a)(1)(A). Defendants do not address this difference in their opposition. Because Defendants do not allege that good cause does not exist for an extension of time, they are deemed unopposed to an extension as to the parties' opposition and reply briefs.

Tobey's delay in filing has caused or will cause them prejudice, and their filing of an opposition brief on October 31, 2013, is consistent with a lack of prejudice. Similarly, the delay has no appreciable impact on the judicial proceedings, and there has been no allegation or indication of bad faith on the part of Tobey.

Defendants' reliance on *Smith v. EVB*, No. 3:09-cv-554, 2010 U.S. Dist. LEXIS 120669 (E.D. Va. Nov. 15, 2010) (Spencer, J.), is persuasive, but the case ultimately is distinguishable. In *Smith*, this Court denied a motion to extend time on the grounds that the movant failed to establish excusable neglect. 2010 U.S. Dist. LEXIS 120669, at *6-8. The movant had argued that he misinterpreted the Court's order and believed he had more time to file a response brief with the Court and, additionally, that he was "not feeling well" and was out of the office. *Id.* at *6. The Court denied the extension in part because the plaintiff "did not submit to the Court any verified complaints of medical issues." *Id.* at *8. However, the plaintiff in *Smith* had previously requested extensions of time and had made an appearance in a different case during the time he was purportedly ill. *See* Defendant EVB's Opposition, Doc. No. 56, *Smith,* 2010 U.S. Dist. LEXIS 120669, at 1-2. These facts may make Smith distinguishable with regard to Tobey's allegation of illness, and although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, Tobey asserts only intervening circumstances beyond his control to excuse his failure to adhere to the Briefing Order. *See Pioneer*, 507 U.S. at 388, 392.

As such, the Court GRANTS Tobey's Motion for Extension and DEEMS Plaintiff's Motion for Summary Judgment timely filed.

B. CROSS-MOTIONS FOR SUMMARY JUDGMENT

In a denial of benefits challenge under ERISA, this Court applies the deferential "abuse of discretion" standard to decisions by a plan administrator where the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Stanley v. Metro. Life Ins. Co.*, 312 F. Supp. 2d 786, 789 (E.D.

Va. 2004) (quoting *Firestone*, 489 U.S. at 115). The Parties agree that the abuse of discretion standard is applicable to Keiter's decision. The Plan expressly designated Keiter's Board of Directors as the Plan Administrator and vested it or its delegate with "sole and express discretionary responsibility to interpret the terms of the Plan and to decide factual and other questions relating to the Plan and Plan benefits, including, without limitation, eligibility for, entitlement to and payment of benefits." AR000007. Keiter has indicated, and Tobey has not disputed, that the Executive Committee was delegated authority by the Board to make all discretionary determinations with regard to Tobey's claim for benefits. As such, the Executive Committee's decision will be reviewed under the abuse of discretion standard.

Although cross motions for summary judgment are before the Court, the single question presented is whether Keiter abused its discretion in denying Tobey benefits under the Plan. While the Court would normally consider each motion separately, a combined analysis is appropriate where each party's motion is little more than a reiteration of its opposition to the other motion. *See Woods v. Prudential Ins. Co. of Am.*, No. 4:06cv148, 2007 U.S. Dist. LEXIS 41273, at *16 (E.D. Va. June 6, 2007), *vacated on other grounds by* 528 F.3d 320 (4th Cir. 2008). Keiter's denial letters explicitly state that benefits were denied because Tobey failed to meet the Plan's retirement notice requirement. Specifically, the letters explain that the Executive Committee determined that Tobey rescinded the 2009 Notice, making his February 2012 notice effective for the purposes of the Plan. As such, the more specific question presented is whether Keiter unreasonably determined that the 2009 Notice was rescinded and ineffective.

Tobey argues that Keiter abused its discretion because its denial decision was based on an unreasonable interpretation of the purpose and plain language of the Plan made while acting under a substantial conflict of interest.[4]  Keiter argues that it did not abuse its discretion and

---

[4] At oral argument, Tobey asserted for the first time that although summary judgment in his favor was appropriate, summary judgment in favor of Keiter was inappropriate because a material factual dispute existed as to whether Keiter's conflict of interest tainted its denial decision. However, the standard for evaluating a plan administrator's decision expressly weighs the existence of, and extent to which, any conflict of interest makes a decision unreasonable. *See Booth*, 201 F.3d at 342-43. Courts regularly grant motions for summary judgment despite the fact

based its denial decision on substantial evidence after resolving a factual dispute as authorized by the Plan.

The Fourth Circuit has made clear that a decision is not an abuse of discretion "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)). The abuse of discretion standard, therefore, "equates to reasonableness" and is less deferential than the arbitrary and capricious standard. *Id.* at 322 (citing *Firestone*, 489 U.S. at 111; *Booth*, 201 F.3d at 342). The Court considers eight nonexclusive factors in determining whether a plan administrator's decision was reasonable:

> (1) The language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the material considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretation of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43. Keiter's decision to deny Tobey's claim for retirement benefits must be upheld unless, under the rubric set forth in *Booth*, its decision was an unreasonable abuse of discretion.

Under the first *Booth* factor, the Court must consider whether the Executive Committee's interpretation of the Plan was reasonable. Tobey asserts that this factor weighs in his favor because the Executive Committee's interpretation was unreasonable. Specifically, he argues that because section 6(b) of the Plan does not provide for rescission of written notice of retirement, no rescission of written notice can occur. Rather, Tobey argues that the only reasonable

---

that conflicts of interest exist. *See, e.g.*, *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860 (4th Cir. 2011) (affirming the district court's grant of summary judgment where a conflict of interest existed); *Hilton v. UNUM Life Ins. Co. of Am.*, No. 1:12-CV-866, 2013 U.S. Dist. LEXIS 120272 (E.D. Va. Aug. 22, 2013). Tobey's reliance on *Wicklander v. Defined Benefit Pension Plan*, No. CV 04-804 AS, 2004 U.S. Dist. LEXIS 20607 (D. Or. Oct. 5, 2004), is misplaced. The District of Oregon refused to grant summary judgment where the existence of a conflict of interest was disputed. *Id*. at *12-13. This Court is not precluded from granting summary judgment where the Parties concede the existence of a conflict of interest.

interpretation of the Plan is that the written notice requirement is completely and irrevocably satisfied upon delivery of written notice, so long as actual retirement occurs more than two years after delivery.

Keiter explained its rejection of this interpretation of the Plan in the denial of Tobey's first appeal. Under both the first and second *Booth* factors, Keiter's interpretation of the Plan was entirely reasonable for two reasons. First, Keiter's interpretation of the Plan was consistent, or at least not inconsistent, with the purposes and goals of the Plan. The Plan states that "the intent of the Corporation is to pay retirement benefits to those of its employees designated as having participating status." AR000001. However, Keiter reasonably asserts, and Tobey does not dispute, that the purpose of the Plan's notice provision is to incentivize retiring employees to provide sufficient time to implement succession planning. Effective succession planning provides financial benefits to Keiter, insuring future retirement benefits. In light of Keiter's determination that Tobey had rescinded the 2009 Notice, Keiter's denial of benefits for lack of timely notice of intent to retire was consistent with the purpose and goals of the Plan.

Second, Keiter reasonably rejected Tobey's assertion that the Plan's silence as to rescission precluded the possibility of rescinding written notice of retirement. Keiter explained in its second denial letter that it "disagrees with [Tobey's] interpretation of Section 6(b)" because precluding the possibility of rescission of written notice would "lead to absurd results" by allowing employees to satisfy the notice requirement "simply by giving notice of an intent to retire 'someday' more than two years in the future." AR000632. Benefits plans subject to ERISA are interpreted under the ordinary principles of contract law and courts regularly find consistent, additional terms to be implied where a contract is silent. *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995). The Plan vested Keiter with interpretive discretion, and it was therefore not unreasonable for Keiter to interpret section 6(b) to allow for mutual rescission of written notice of intent to retire. Further, the Plan vested Keiter with discretion to "decide factual and other questions relating to the Plan." AR000007. In light of this unambiguous

language, it was within Keiter's discretion to determine whether Tobey's rescinded the 2009 Notice shortly after tendering it. Accordingly, the Court finds Keiter's interpretation of section 6(b) to be reasonable in light of the purpose of the notice requirement and the text of the 2009 Notice itself, which contemplated its own rescission.

Under the third *Booth* factor, the material considered by the Executive Committee was adequate and substantially supported Keiter's denial decision. Again, the Parties acknowledge that the dispositive fact in issue is whether Tobey rescinded the 2009 Notice, and the Plan gives discretion to Keiter to decide factual questions. Consistent with its discretion, Keiter looked to circumstantial evidence to determine whether Tobey actually rescinded the 2009 Notice. In addition to considering the declarations of both Tobey and Hall, Keiter considered documents ultimately appended to an administrative record of 667 pages. As discussed, *infra*, the administrative record substantially supports Keiter's denial decision.[5]

Under the fifth *Booth* factor, Tobey argues that Keiter's decision-making process was improper because Hall participated, despite a conflict of interest, and because the denial decisions were preordained. Regarding Hall's participation, the primary factual dispute governing Tobey's claim centers on whether Tobey explicitly rescinded the 2009 Notice in an undocumented conversation with Hall. Despite this conflict, Hall participated in discussions regarding disposition of Tobey's claim and maintained throughout that Tobey had verbally rescinded the 2009 Notice. To the extent that Tobey argues that Hall's participation caused Keiter's process to be unreasoned and unprincipled, the Court assesses the effect of Hall's conflict of interest under the eighth *Booth* factor.

Regarding the preordained nature of the denial decision, Tobey argues that Rick White's affidavit proves that his claim was not given proper consideration. While the administrative record indicates that the denial decision may have been made as early as March 7, 2012, *see*

---

[5] With regard to the fourth and seventh *Booth* factors, neither party included evidence in the administrative record speaking to Keiter's prior interpretations of the Plan or any external standards relevant to Keiter's exercise of discretion. Additionally, neither party makes an argument on these factors. As such, the fourth and seventh *Booth* factors do not weigh in favor of either party.

AR000268 (worrying that wording in the March 9th letter could compromise Keiter's position), there is nothing in the record to indicate that Keiter made its decision prior to considering the merits. Keiter began discussions of Tobey's claim almost immediately after he tendered his resignation, met at least once to discuss the claim, and discussed the drafting of the March 9th letter extensively prior to its delivery. White's affidavit only indicates that "soon []after" February or March of 2012, Hall indicated that Tobey's claim would be denied. This vague assertion is not inconsistent with the foregoing analysis and, therefore, Tobey has not shown that the denial decision was preordained.[6]

Under the sixth *Booth* factor, the Court finds that the Executive Committee's denial decision was consistent with the procedural and substantive requirements of ERISA. As noted above, Keiter's denial decision was consistent with the language of the Plan. Further, Tobey was fully aware of his rights and obligations under the Plan. *See Friz v. J&H Marsh & McLennan, Inc.*, 2 F. App'x 277, 282 (4th Cir. 2001).

While the foregoing factors weigh heavily in favor of Keiter, the eighth *Booth* factor requires the Court to account for the multiple conflicts of interest under which Keiter was operating. First, Keiter was operating under a financial conflict of interest as both the Plan administrator and entity funding the Plan. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). Keiter concedes that a financial conflict of interest existed, but illogically argues that Tobey's knowledge of the conflict of interest reduces its significance to this Court's analysis. (Defs.' Mem. Opp. Pl.'s Mot. 27.) Keiter's structural conflict of interest is confirmed by the Executive Committee's immediate consideration of the financial ramifications of Tobey's claim.

Second, there is some evidence in the record to indicate that members of Keiter's Board of Directors held personal animus against Tobey. Specifically, COO Gustavvson responded, "Game on Bitches!" when informed that Tobey's initial denial letter would be sent. AR000310.

---

[6] Tobey additionally argues that his appeal was preordained as evidence by Chief Operating Officer ("COO") Gustavvson's expression of hope Tobey had procedurally defaulted his appeal. In light of the fact that COO Gustavvson did not participate in consideration of Tobey's appeal, this argument fails.

While this statement may or may not be reflective of personal animus toward Tobey, it seems to at least indicate that she viewed Tobey's claim for benefits in a hostile and adversarial light.

Third, Hall participated in the denial decision, despite the fact that it turned on his assertion that Tobey rescinded the 2009 Notice. Hall appears to have guided discussion regarding disposition of Tobey's claim and to have drafted both denial letters, which relied heavily on his own contention that Tobey had verbally rescinded the 2009 Notice. While Keiter argues that it was reasonable for Hall to participate *because* of his first-hand knowledge—rather than despite it—Hall's participation realistically guaranteed one vote for denial of Tobey's claim. As such, the administrative record indicates that Keiter was operating under at least one, and possibly three, conflicts of interest at the time it denied Tobey's claim for retirement benefits.

The Supreme Court has held that an ERISA plan administrator's conflict of interest must be considered as "one factor among many" in deciding whether a denial decision was an abuse of discretion. *Glenn*, 554 U.S. at 116. The Court declined to create a "one-size-fits-all" standard, and instead acknowledged that the impact of a conflict of interest may vary depending on case-specific considerations. *Id.* at 116-17. Where circumstances suggest a higher likelihood that a conflict of interest affected a denial decision, the conflict of interest factor will weigh more heavily. *Id.* at 117.

In this case, the Parties and the Court agree that proper disposition of Tobey's claim turned on whether he explicitly rescinded the 2009 Notice. The Executive Committee exercised its discretion to make factual determinations and found that Tobey did, in fact, explicitly rescind the 2009 Notice. Therefore, to determine the proper weight accorded to the conflict of interest factor, the Court must determine whether there is a likelihood that Keiter's factual determination was affected by its conflict of interest. *See id.*

To assess the objective reasonableness of Keiter's factual determination, the Court looks to the direct and circumstantial evidence in the administrative record upon which Keiter based the denial decision. The direct evidence in the administrative record is limited to directly

14

conflicting, and equally probative, evidence—Hall's word against Tobey's.[7] The administrative record additionally contains circumstantial evidence bearing on Tobey's instructions for the 2009 Notice.

The circumstantial evidence indicating that Tobey did not rescind his 2009 Notice is limited to one fact: the accompanying memorandum listed several complaints about Keiter's treatment of Tobey and vaguely asserted that he "hope[d] to have reason in the future to rescind [his] notice." AR000066. Tobey argues that because his complaints were never addressed, he would not have rescinded the 2009 Notice. The Court finds Tobey's attempt to characterize the 2009 Notice as a "contingent notice of retirement" to be highly unpersuasive. As an initial matter, a contingent notice of retirement would be in conflict with the admitted purpose of section 6(b) of the Plan. Allowing contingent notice of retirement to satisfy the Plan's requirement would make Tobey the sole arbiter of whether his complaints were resolved and whether, or when, he might retire. More fundamentally, Tobey mischaracterizes the nature of the 2009 Notice. The 2009 Notice listed complaints and "allow[ed] seven days to work things out with [the Executive Committee] before calling a Board of Directors meeting." AR000063. It then posited that the Executive Committee was "trying to drive [Tobey] out of the firm," suggested that, if so, Tobey would "discuss a resolution." AR000065. This language signals that Tobey was suggesting the possibility of a buy-out, rather than submitting a contingent notice of retirement. Nevertheless, in addition to requesting action, the 2009 Notice went on to "also serve as notice to the firm" of Tobey's intended retirement. AR000065. Despite his vague hope for future rescission, Tobey did not predicate rescission of the 2009 Notice on any particular

---

[7] Tobey argues that the Court should discount Hall's testimonial evidence—as well as the Executive Committee's consideration of it—because it was not made under oath. The Fourth Circuit does not appear to have specifically addressed this issue. However, one court in the Fourth Circuit has explicitly held that "the Federal Rules of Civil Procedure do not apply to an ERISA administrator's benefits determination." *Faulkner v. Columbia Gas Transmission, LLC*, No. 5:09CV123, 2012 U.S Dist. LEXIS 21812, at *15 (N.D. W. Va. Feb. 22, 2012) (internal quotation marks omitted). Additionally, at least one sister circuit has explicitly held that a "plan administrator is not a court of law and is not bound by the rules of evidence." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 622 n.4 (7th Cir. 2008) (citation omitted). The Court agrees and finds that Hall's declaration was properly included in the administrative record.

action by the Executive Committee. As such, the Court finds that this circumstantial evidence only weakly supports the conclusion that Tobey did not rescind the 2009 Notice.

In contrast, there is a large body of circumstantial evidence indicating that Tobey did, in fact, rescind the 2009 Notice. This evidence generally relates to Tobey's behavior after 2009 that was inconsistent with the intention stated in the 2009 Notice and, therefore, consistent with the conclusion that Tobey had rescinded the 2009 Notice. The denial letters provided to Tobey detail this circumstantial evidence, but persuasive examples of this behavior include: (1) self-reporting in 2010 of an expected retirement date of December 31, 2017; (2) failure to call a Board of Directors meeting as indicated in the 2009 Notice; (3) presentation of achievement goals for 2012 without indicating an intent to retire; (4) participation in January 2013 in a hiring decision whose purpose was to facilitate Tobey's 2012 goal achievement; and (5) failure on multiple occasions to object to the accuracy of circulated documents which listed Tobey's retirement date in 2017.[8]

Based on these facts, the body of circumstantial evidence in the administrative record supports the conclusion that Tobey actually rescinded the 2009 Notice. Because the evidence tending to show that Tobey did rescind the 2009 Notice substantially outweighs evidence to the contrary, the Court cannot conclude that Keiter's denial decision was unreasonably influenced by any conflict of interest. Accordingly, the conflict of interest factor should not be given sufficient weight to overcome the other *Booth* factors, which weigh heavily in Keiter's favor.

On balance, the *Booth* factors (including consideration of the conflicts of interest Keiter held) favor a finding that Keiter did not abuse its discretion. Because the Plan gave Keiter discretion both to construe terms of the plan and to resolve factual disputes, this Court may only deny summary judgment if Keiter unreasonably concluded that Tobey rescinded the 2009

---

[8] Tobey argues that these facts are "absolutely inconsequential" because Tobey never actually rescinded the 2009 Notice and because the Plan does not require acts, subsequent to written notice, confirming the intent to retire. While the latter assertion is a correct characterization of the Plan, Tobey misconstrues the context in which this Court and Keiter considers these facts. Because the dispositive dispute concerns whether Tobey explicitly rescinded his 2009 Notice, these facts merely act as circumstantial evidence of whether rescission occurred, as was explained in both Keiter's initial denial letter and its appeal denial letter.

Notice. "[T]he court does not reverse merely because it would have come to a different result in the first instance." *Evans*, 514 F.3d at 325. Accordingly, the Court cannot hold that Keiter's denial decision was an unreasonable abuse of discretion.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Extension of Time is GRANTED, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this ___7th____ day of January 2014.

17